PROB 12C
(Rev.2011)

# United States District Court
### for
### Middle District of Tennessee

## Petition for Summons for Offender Under Supervision

Name of Offender: <u>Benji Amos</u>         Case Number: <u>3:07-00255</u>

Name of Sentencing Judicial Officer: <u>Honorable Thomas A. Wiseman, Jr., Senior U.S. District Judge</u>

Date of Original Sentence: <u>June 29, 2009</u>

Original Offense: <u>18 U.S.C.§ 922(g)(1), Felon in Possession of a Firearm</u>

Original Sentence: <u>32 months' custody followed by 3 years' supervised release</u>

Type of Supervision: <u>Supervised Release</u>       Date Supervision Commenced: <u>December 1, 2011</u>

Assistant U.S. Attorney: <u>Jimmie Lynn Ramasur</u>       Defense Attorney: <u>Ronald C. Small</u>

---

### PETITIONING THE COURT

   <u>  X  </u>   To issue a Summons
   <u>     </u>   To issue a Warrant

---

**THE COURT ORDERS:**

☐ No Action
☐ The Issuance of a Warrant
   ☐ Sealed Pending Warrant Execution
      (cc: U.S. Probation and U.S. Marshal only)
☒ The Issuance of a Summons
☐ Other

Considered this 27th day of Sept., 2013,
and made a part of the records in the above case.

_____
~~Thomas A. Wiseman, Jr.~~
~~Senior~~ U. S. District Judge TRAUGER

I declare under penalty of perjury that
the foregoing is true and correct.
Respectfully submitted,

_____
Kara Sanders
U.S. Probation Officer Specialist

Place      Nashville, TN

Date      September 16, 2013

## ALLEGED VIOLATIONS

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation No. | Nature of Noncompliance |
|---|---|
| 1. | **The defendant shall not commit another federal, state or local crime.** |

On September 14, 2013, Benji Amos was arrested by the Metro Nashville Police Department and charged with five counts of Falsely Reporting an Emergency. He is being held on $75,000 bond. The court date is pending.

According to police reports the defendant called 911 on five separate occasions, from his cell phone, between August 6, 2013, and September 14, 2013. On each occasion he stated that armed men were occupying an apartment, where his ex-girlfriend frequented. Police responded to the apartment in question all five times, to find the claims unfounded. Mr. Amos reportedly told the police that he was attempting to "get back" at his ex-girlfriend.

| | |
|---|---|
| 2. | **The defendant shall participate in a mental health program as directed by the probation officer. The defendant shall pay all or part of the cost for mental health treatment if the probation officer determines the defendant has the financial ability to do so or has appropriate insurance coverage to pay for such treatment.** |

Mr. Amos failed to comply with mental health treatment as directed from February 2012 to March 2013.

On January 18, 2012, Mr. Amos completed his intake assessment with Centerstone Mental Health. He was diagnosed with Schizoaffective Disorder and Antisocial Personality Disorder. It was recommended that he attend individual mental health treatment twice a month and participate in a psychiatric evaluation to assess his need for psychotropic medication.

On February 16, 2012, U.S. Probation Officer Kara Sanders instructed him to attend mental health treatment as directed. Officer Sanders provided him with the contact information for Centerstone, and he was instructed to contact them immediately to begin therapy. Mr. Amos did not attend mental health treatment in February 2012.

On March 6, 2012, he reported late for his appointment and was not able to be seen by the therapist. On March 15, 2012, he did complete his psychiatric evaluation. His diagnosis was modified to Post Traumatic Stress Disorder, Major Depressive Disorder, and Antisocial Personality

Disorder. The reported indicated he was not cooperative during the evaluation and stated he did not want a male therapist. therefore he did not feel like talking to the therapist or the doctor. He also indicated he would not take any prescribed psychotropic medication. He was prescribed Remeron and instructed to return in four weeks for a medication monitoring appointment. On March 19, 2012, he attended his first mental health treatment session. He reported drinking alcohol and experiencing auditory hallucinations.

On April 9, 2012, he attended individual treatment and reported he had not begun taking the psychotropic medication and was drinking alcohol regularly. He reported not wanting to talk to anyone about his problems.

He attended treatment on May 8, 2012, and reported he had altercations with his coworkers and his ex-girlfriend. He stated he enjoys fighting with others and he gets pleasure from hurting others. His therapist encouraged him to participate fully in treatment and reminded him he is to report for treatment bi-weekly and to get his medication filled.

On May 8, 2012, after his treatment appointment, Mr. Amos reported to the probation office to address his issues with mental health treatment. He became very agitated, loud, and verbally aggressive. The contact was terminated due to Mr. Amos' verbal escalation, and he was allowed time to calm down in order to continue the discussion. Mr. Amos then met with Officer Sanders and Deputy Chief Jim Perdue. At this time Mr. Amos reported he had not filled his prescription, and reported it was too expensive. However, he admitted he had no idea what the cost was. It was determined that the cost was approximately $20 for a 30 day supply. Mr. Amos reported he would get the prescription filled and begin taking it as directed.

On May 17, 2012, during a home contact, Mr. Amos reported he had not filled his prescription. Officer Sanders instructed him to comply with treatment. He attended individual treatment June 6, 2012. His therapist reported no progress and Mr. Amos reported he was not compliant with his medication.

In July 2012, Mr. Amos attended treatment twice and his therapist reported he did not appear engaged or motivated for treatment and remained non-compliant regarding his medication. On July 12, 2012, during a home contact, Mr. Amos reported that he had filled the prescription for the medication and he was encouraged to take it as directed.

On August 20, 2012, he attended treatment and his therapist reported he was actively engaged in the session but continued to not take his medication. On September 10, 2012, Mr. Amos provided documentation of his SSI disability approval for $698 per month, for mental health problems. He also showed evidence indicating he filled his medication

prescription and reported he had begun taking the medication. On September 17, 2012, he attended treatment. On October 1, 2012, he did not show for treatment. On October 10, 2012, he cancelled his treatment

appointment due to transportation issues. Mr. Amos did attend treatment on October 15, 2012, and his therapist continued to report he had limited engagement in treatment and continues to not be compliant with his medication. On October 29, 2012, Officer Sanders instructed Mr. Amos to comply with is mental health treatment and take his medication. Mr. Amos reported he was getting his medication re-filled that day.

Mr. Amos did not show for treatment on November 5, 2012, but did attend treatment on November, 27, 2012. The treatment report for November indicated Mr. Amos appeared to have slight improvement regarding his insight. On December 17, he attended treatment and his therapist reported improved efforts to attend therapy and medication compliance.

On January 7, 2013, he failed to show for treatment but did attend on January 22, 2013. His therapist reported his attitude toward treatment was indifferent and he reported no mental health symptoms at that time. He did not attend treatment in February 2013. On February 28, 2013, during a home contact, Officer Sanders instructed Mr. Amos to attend treatment as directed. He reported he was never really compliant with his psychotropic medication and he was not having any mental health issues. Officer Sanders instructed him to comply with treatment as directed. He did not attend treatment in March 2013.

In April 2013, Centerstone Mental Health discharged him from treatment. No further treatment was recommended at that time as Mr. Amos was non-compliant with attending individual therapy sessions.

In April of 2013, a report was submitted to the Court regarding a Domestic Assault charge. No action was taken and Mr. Amos was allowed to continue on supervision.

On June 4, 2013, during a home contact, Mr. Amos reported his mental health was stable and he was not having any issues, however, he was "stressed out" over the pending Domestic Assault case. Officer Sanders encouraged him to reconnect with Centerstone Mental Health to address any issues. On August 1, 2013, during a home contact, Officer Sanders encouraged Mr. Amos to reconnect with Centerstone, and he expressed that his mental health was stable and he did not need to return to Centerstone Mental Health.

Mr. Amos attended his medication monitoring appointments on a regular basis even though he was not compliant with taking his medication.

**Compliance with Supervision Conditions and Prior Interventions:**

Mr. Amos began his three-year term of supervised release on December 1, 2011. He has been receiving social security disability benefits since March 2012, due to mental health issues, therefore he is not employed.

In December 2011, Centerstone Mental Health completed an assessment and diagnosed him with Major Depressive Disorder, Posttraumatic Stress Disorder, Polysubstance Abuse and Antisocial Personality Disorder. He began mental health treatment in February 2012. He attended treatment on a sporadic basis. Mental health treatment was terminated in March 2013, as he reported his mental health was stable and services were no longer recommended due to his failure to comply as recommended.

Since his release, Mr. Amos has primarily resided with his mother. However, there have been multiple occasions of him residing with various girlfriends. Currently, he is residing with his mother and his son, Benji Amos Jr.

Mr. Amos has tested negative for illegal drugs from December 2011, to March 2013. It should be noted that he does report drinking alcohol and liquor bottles have been found in his room during home contacts. He denies drinking to excess.

In April 2013, a report was submitted to the Court reporting a Domestic Assault arrest, failure to participate in mental health treatment and failure to participate in drug testing as directed. Mr. Amos reports the case will be dismissed upon his completion of a parenting class. The next hearing is set for November 19, 2013. The Court took no action on this matter.

**Update on Offender Characteristics:**

As of the writing of this petition, Mr. Amos remains in custody at the Criminal Justice Center.

**U.S. Probation Officer Recommendation:**

It is respectfully recommended that a summons be issued so that Mr. Amos may appear before Your Honor for a revocation hearing to address the violation behavior.

The U.S. Attorney's Office concurs with the probation officer's recommendation.

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. BENJI AMOS, CASE 3:07-00255

**GRADE OF VIOLATION:** C  
**CRIMINAL HISTORY:** VI

**ORIGINAL OFFENSE DATE:**

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 2 Years (Class C felony) 18 U.S.C. § 3583(e)(3) | 8-14 Months U.S.S.G §7B1.4(a) | No recommendation |
| SUPERVISED RELEASE: | 36 months less any term of imprisonment 18 U.S.C. § 3583(h) | 1-3 years U.S.S.G. § 5D1.2(a)(2) | No recommendation |

18 U.S.C. § 3583(e)(3) allows for revocation of supervised release and requires the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release, in accordance with 18 U.S.C. § 3583(h).

**Guideline Policy Statements:**
Upon a finding of a Grade C violation, the Court may revoke supervised release, extend the term of supervised release and/or modify the conditions of supervision, U.S.S.G § 7B1.3(a)(2).

Respectfully submitted,

Kara Sanders  
U.S. Probation Officer Specialist

Approved: _____  
Britton Shelton  
Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. **Defendant** Benji Amos

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 3:07CR00255 - 1

3. **District/Office** Middle District of Tennessee

4. **Original Sentence Date** 06 / 29 / 2009
                            month   day   year

5. **Original District/Office**
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)*

7. **List each violation and determine the applicable grade (see §7B1.1):**

   | Violation(s) | Grade |
   |---|---|
   | shall not commit another federal, state or local crime | C |
   | shall participate in mental health treatment as directed | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))* — C

9. **Criminal History Category** *(see §7B1.4(a))* — VI

10. **Range of Imprisonment** *(see §7B1.4(a))* — 8-14 months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

    ☐ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

    ☒ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

    ☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

**Defendant** Benji Amos

12. **Unsatisfied Conditions of Original Sentence**

    List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

    Restitution($) _____     Community Confinement _____
    Fine($)        _____     Home Detention           _____
    Other          _____     Intermittent Confinement _____

13. **Supervised Release**

    If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

    Term: _____ to _____ years

    If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

    Period of supervised release to be served following release from _____
    imprisonment:

14. **Departure**

    List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002